UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE HENDERSON,

   Petitioner,

             CASE NO. 2:09-CV-13143
v.              JUDGE NANCY G. EDMUNDS
             MAGISTRATE JUDGE PAUL KOMIVES

MARY BERGHUIS

   Respondent.
            /

## REPORT AND RECOMMENDATION ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (docket #8)

I. RECOMMENDATION: The Court should conclude that petitioner's application for the writ of habeas corpus is barred by the one year statute of limitations contained in 28 U.S.C. § 2244(d). Accordingly, the Court should grant respondent's motion for summary judgment (docket #8). Alternatively, the Court should deny petitioner's habeas application on the merits. If the Court accepts either of these recommendations, the Court should also deny a certificate of appealability.

II. REPORT:

A. *Procedural Background*

Petitioner Willie Henderson is a state prisoner, currently confined at the Earnest C. Brooks Correctional Facility in Muskegon, Michigan. Petitioner is serving a sentence of 35-50 years' imprisonment imposed as a result of his 2002 state court conviction for second degree murder. Petitioner's application and the state court record reveal the following time line of the state court proceedings:

- Petitioner was convicted of second degree murder following a jury trial in the Wayne County Circuit Court. On November 14, 2002, the Court imposed its sentence.

- Petitioner appealed as of right to the Michigan Court of Appeals. The court of appeals

> affirmed petitioner's conviction on December 28, 2004. *See People v. Henderson*, No. 247609 (Mich. Ct. App. Dec. 28, 2004).

- Petitioner attempted to file a *pro se* application for leave to appeal in the Michigan Supreme Court. Petitioner contends that the application was given to prison officials for mailing on February 21, 2005. The application was received by the Michigan Supreme Court on March 3, 2005. On March 7, 2005, the application was rejected by the Clerk and returned to petitioner because it was not filed within 56 days of the court of appeals's decision as required by MICH. CT. R. 7.302(C)(2).

- On August 23, 2007, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.509. The trial court denied the motion on November 14, 2007.

- Petitioner sought leave to appeal in the Michigan Court of Appeals. The court of appeals denied petitioner's application on July 22, 2008. *See People v. Henderson*, No. 284371 (Mich. Ct. App. July 22, 2008).

- Petitioner thereafter sought leave to appeal in the Michigan Supreme Court. That court denied petitioner's application for leave to appeal on November 25, 2008. *See People v. Henderson*, 482 Mich. 1068, 757 N.W.2d 473 (2008).

On August 4, 2009, petitioner filed this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] As grounds for the writ, petitioner contends that he was denied a fair trial by the failure of the trial court to give a lesser offense instruction on involuntary manslaughter.[2] Contemporaneous with his habeas application, petitioner also filed a motion for equitable tolling, conceding that his application is untimely but seeking equitable tolling of the limitations period.

---

[1] Although petitioner's application is file-stamped August 11, 2009, it is well-established that a habeas petition is deemed "filed" for purposes of the statute of limitations on the date the petitioner gives his motion to prison officials for mailing. *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *Beckovich v. Coyle*, 22 F. Supp. 2d 722, 723 (N.D. Ohio 1998); *cf. Houston v. Lack*, 487 U.S. 266, 270 (1988). Petitioner's application is dated August 4, 2009. Accordingly, I assume that the petition was given to prison officials for mailing, and was thus "filed," on August 4, 2009.

[2] Petitioner also contends that his appellate counsel's failure to file an application for leave to appeal in the Michigan Supreme Court constitutes good cause for his failure to raise the jury instruction claim there. This claim is not asserted as an independent basis for habeas relief, but as cause to excuse his procedural default.

2

Respondent filed a motion for summary judgment on February 16, 2010, arguing that petitioner's habeas application is untimely. For the reasons that follow, the Court should grant respondent's motion for summary judgment. Alternatively, the Court should dismiss the petition on the merits.[3]

B.    *Timeliness of Petitioner's Habeas Application*

    1.    *Statutory Timeliness and Tolling*

Respondent argues that petitioner's application is barred by the one-year statute of limitations governing habeas petitions. On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996). In relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of limitations for habeas petitions. Specifically, the statute as amended by the AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>     (A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>     (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>     (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

---

[3]As of the date of this Report, petitioner has not filed a response to respondent's motion for summary judgment. Pursuant to E.D. MICH. LR 7.1(e)(1)(B), petitioner had 21 days from the date of service in which to file his response. Including the three extra days for service by mail provided for in FED. R. CIV. P. 6(d), petitioner's response was due 24 days from February 16, 2010, or on March 12, 2010. In any event, no further delay for a response is necessary, because petitioner's motion for equitable tolling presents his arguments with respect to the limitations issue.

28 U.S.C. § 2244(d).[4]

As the language of the statute indicates, there are four possible dates on which the limitations period may begin to run. The claims asserted in petitioner's habeas application do not implicate subparagraphs (B) through (D), and thus subparagraph (A) applies here. Under subparagraph (A) of § 2244(d),

> a judgment of conviction does not become "final" . . . until the Supreme Court affirms the conviction and sentence on the merits or denies a timely filed petition for certiorari.
> In addition, if a defendant does not file a certiorari petition, the judgment of conviction does not become "final" until the time for seeking certiorari review expires.

*Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999); *see also*, *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997) (conviction became final upon denial of certiorari); *Torres v. Irvin*, 33 F. Supp. 2d 257, 271 (S.D.N.Y. 1998) ("[A] judgment of conviction only becomes final upon the expiration of the ninety days to seek a writ of certiorari from the United States Supreme Court."); *United States v. Dorsey*, 988 F. Supp. 917, 918 (D. Md. 1998) (same); *cf. Penry v. Lynaugh*, 492 U.S. 302, 314 (1989) (for purpose of determining whether application of new rule of law would be an impermissible retroactive application to a case which has already become final, conviction becomes final upon denial of the defendant's petition for certiorari); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

Petitioner contends that his conviction became final when the Michigan Supreme Court

---

[4]The AEDPA codified a one-year statute of limitations provision for motions to vacate federal convictions brought under 28 U.S.C. § 2255 which is nearly identical to the one found in § 2244(d)(1). *See* 28 U.S.C. § 2255 para. 6. Accordingly, cases discussing the § 2255 statute of limitations are applicable here.

4

rejected his late-filed application for leave to appeal on March 7, 2005. Respondent argues that, because there was not a properly filed appeal from the Michigan Court of Appeals's decision, petitioner's conviction became final 56 days after that decision, when petitioner's time for seeking review expired pursuant to MICH. CT. R. 7.302(C)(2). The Court need not resolve this question, however, because even giving petitioner the benefit of the doubt, his application is still untimely. Assuming that the Michigan Supreme Court's March 7, 2005, rejection of petitioner's appeal constitutes the state courts' last decision on direct review, petitioner's conviction became final 90 days later when the time for seeking *certiorari* in the United States Supreme Court expired. Petitioner's conviction therefore became final on June 5, 2005. Thus, the limitations began to run on June 5, 2005, and expired one year later, on June 5, 2006. Because petitioner did not file his habeas application until August 4, 2009, it is untimely unless the limitations period was tolled for any reason.

Under § 2244(d)(2), the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" Petitioner's motion for relief from judgment was filed in the trial court on August 23, 2007. By this time, however, the limitations period had been expired for nearly 15 months. It is well established that subsection (d)(2) is a tolling provision and therefore a post-conviction motion only pauses the limitations clock; it "does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.2d 13, 17 (2d Cir. 2000); *see also*, *Brooks v. McKee*, 307 F. Supp. 2d 902, 905 (E.D. Mich. 2004) (Gadola, J.). By the time petitioner filed his motion for relief from judgment, the one-year limitation period had already expired, and thus this filing cannot serve to toll the limitations period. *See Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000); *Jackson v. Dormire*, 180 F.3d 919, 920 (8th Cir. 1999) (per curiam); *Smith v. Stegall*, 141 F. Supp. 2d 779, 782-83 (E.D. Mich. 2001) (Gadola, J.). Thus, under the statute

5

petitioner's habeas application is untimely.

   2.   *Equitable Tolling*

Petitioner does not quarrel with the foregoing calculation, and concedes that his petition is untimely under § 2244(d). Rather, petitioner contends that he is entitled to equitable tolling of the limitations period. The Court should reject this argument.

To be entitled to equitable tolling of the limitations period, petitioner "must show '(1) that he had been pursing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. Diuglielmo*, 544 U.S. 408, 418 (2005)). "The petitioner bears the burden of establishing that he is entitled to equitable tolling." *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). Here, petitioner has failed to point to any extraordinary circumstance which prevented timely filing. Petitioner contends that he is entitled to equitable tolling because he had no knowledge of the limitations period, and is an elderly prisoner who is uneducated in the law and comprehends at the fourth grade level. The Courts have uniformly held that neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling. Nor does his *pro se* status at the time of the first motion for relief from judgment provide a basis for equitable tolling. *See Lattimore v. DuBois*, 311 F.3d 46, 55 (1st Cir. 2002); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *Rodriguez v. Elo*, 195 F. Supp. 2d 934, 936 (E.D. Mich. 2002) (Rosen, J.). Thus, petitioner is not entitled to equitable tolling of the limitations period.

   3.   *Conclusion Regarding the Limitations Issue*

In view of the foregoing, the Court should conclude that petitioner's habeas application is untimely, and that he is not entitled to equitable tolling of the limitations period. Accordingly, the

Court should grant respondent's motion for summary judgment and dismiss the petition.

C.  *Summary Dismissal*

Alternatively, or if the Court does not accept my conclusion regarding the limitations issue, the Court should deny the petition on the merits.

1.  *Legal Standard*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S.

at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's

resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

    2.    *Analysis*

Petitioner was charged with first-degree premeditated murder in connection with the strangulation death of his estranged wife. The evidence against petitioner consisted of his statement to the police, as testified to by two officers, and the testimony of the assistant medical examiner. The police officers testified that they responded to a 911 call placed by petitioner. Upon their arrival at petitioner's apartment building, petitioner exhibited no signs of physical injury or disheveled clothing, and he appeared calm. He told the officers that the victim had forced her way into the apartment, and that a struggle ensued. He attempted to restrain her by grabbing her throat and putting her on the floor. As he held her down, she fell into unconsciousness. *See* Trial Tr., Vol. I, at 107-13 (testimony of Officer Ronald Loosvelt), 130-34 (testimony of Officer Jon Rose). Dr. Leigh Hlavaty, the assistant medical examiner, testified that the victim dies from asphyxia due to a neck hold. She testified that with the application of constant pressure, loss of consciousness would result in about 30 seconds, with death following if the pressure were maintained for about 2½ minutes. With the application of inconsistent pressure, death could take as long as 4-5 minutes. Although a person's use of cocaine increases the susceptibility to asphyxial death and the victim's toxicology report showed evidence of cocaine use, Dr. Hlavaty opined that the cocaine in the victim's system did not cause or significantly contribute to the victim's death. *See id.*, Vol. II, at 7-40.[5] Petitioner did not testify or offer any

---

[5]In addition to these witnesses, the prosecution presented the testimony of Officer Frank Horan, a crime scene technician, who testified to his examination of the crime scene, *see* Trial Tr., Vol. I, at 144-54, and Vertina Hawk, the victim's niece, who testified to identifying the victim's body at the hospital, *see id.* at 154-56.

9

evidence on his own behalf. Counsel argued that the evidence showed that petitioner was merely attempting to subdue the victim and had no intent to kill her or cause great bodily harm, and that the death was an accident. *See id.*, Vol. I, at 106-07; Vol. II, at 67-71.

The trial court instructed the jury on the elements of first degree murder as charged, and on the lesser included offenses of second degree murder and voluntary manslaughter, *see id.*, Vol. II, at 83-86, but declined to give petitioner's requested lesser offense instruction on involuntary manslaughter, *see id.* at 55-58. The jury found petitioner guilty of the lesser offense of second degree murder. In his habeas claim, as on appeal, petitioner contends that he was denied a fair trial by the trial court's refusal to give an instruction on involuntary manslaughter. The Michigan Court of Appeals rejected this claim, reasoning that an instruction on involuntary manslaughter was not warranted under the evidence. *See* Ct. App. op., at 1-2. The Court should conclude that petitioner is not entitled to habeas relief on this claim, for two reasons.

First, the court of appeals's determination was not contrary to or an unreasonable application of any clearly established Supreme Court law. Although the Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case, *see Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (trial court required to instruct *sua sponte* on lesser included offenses where the failure to do so would result in the jury being given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant), "the Constitution does not requires a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). As the Sixth Circuit has noted, even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also*, *Scott v. Elo*, 302 F.3d 598,

606 (6th Cir. 2002). At a minimum, there is no clearly established Supreme Court law which requires the giving of a requested lesser offense instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1). *See Samu v. Elo*, 14 Fed. Appx. 477, 479 (6th Cir. 2001); *Kuroda v. Bell*, No. 2:07-CV-12310, 2007 WL 1657410, at *2 (E.D. Mich. June 7, 2007) (Cohn, J.); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (Tarnow, J.). Thus, the Michigan Court of Appeals's resolution of this claim was not contrary to, or an unreasonable application of, clearly established federal law, and petitioner is therefore not entitled to habeas relief on this claim.

Second, because the jury was instructed on the lesser offense of voluntary manslaughter, which is an intermediate charge between second degree murder and involuntary manslaughter, any error in the failure to give the involuntary manslaughter instruction was harmless. As noted by one circuit court, the Supreme Court has recognized that "in cases involving offenses on a ladder, if the trial court wrongfully refuses to charge the offense at the bottom rung, that error is harmless provided the jury returns a guilty verdict for an offense higher up rather than for an intermediate offense which is also charged." *Geschwendt v. Ryan*, 967 F.2d 877, 884 (3d Cir. 1992) (discussing *Schad v. Arizona*, 501 U.S. 624, 647-48 (1991)); *accord Six v. Delo*, 94 F.3d 469, 478 (8th Cir. 1996), *petition for cert. filed*, No. 96-8471 (U.S. Mar. 31, 1997); *Allridge v. Scott*, 41 F.3d 213, 220 (5th Cir. 1994); *Slade v. Taylor*, 689 F. Supp. 595, 599 (E.D. Va. 1988). Accordingly, because petitioner was convicted of the greater offense of second degree murder over the intermediate offense of voluntary manslaughter, petitioner was not prejudiced by the trial court's failure to instruct on involuntary manslaughter. For these reasons, petitioner is not entitled to habeas relief on his claim, even if his petitioner were other wise timely.

D.    *Recommendation Regarding Certificate of Appealability*

    1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a

certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

Where, as here, a petition is dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold. In such a case, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485 (emphasis added). As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.* at 486.

If the Court accepts the foregoing recommendation, petitioner cannot show either that the Court's ruling on the procedural question is reasonably debatable, nor can he show that the petition states a valid claim of the denial of a constitutional right. With respect to the former, as noted above petitioner concedes that his habeas application is untimely, and argues only that he is entitled to equitable tolling based on his *pro se* status and lack of education. Because the courts have repeatedly and uniformly rejected these as bases for equitable tolling, the Court's rejection of equitable tolling

13

in this case is not reasonably debatable. With respect to the later, as explained above petitioner's jury instruction claim is clearly without merit because the Supreme Court has suggested that state courts are required under the Constitution to give instructions on lesser offenses in non-capital cases, and because any error in failing to give an involuntary manslaughter instruction was harmless. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

E.   *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's application for the writ of habeas corpus is barred by the statute of limitations governing habeas petitions. Accordingly, the Court should grant respondent's motion for summary judgment and dismiss the petition. Alternatively, the Court should deny the petition on the merits. If the Court accepts either of these recommendations, the Court should deny the certificate of appealability..

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>PAUL J. KOMIVES<br>UNITED STATES MAGISTRATE JUDGE

Dated: 3/16/10

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail and Willie Henderson at Earnest C. Brooks Correctional Facility on March 16, 2010.